## Media State Bank, Appellant, v. G. M. Garrett, Appellee.

### Gen. No. 5514.

1. SET-OFF—*what not proper subject of.* A matter originating after the institution of suit is not the proper subject-matter of set-off.

2. APPEALS AND ERRORS—*when erroneous evidence afterwards stricken will reverse.* If the harm resulting from the admission of erroneous evidence is not removed by the subsequent striking thereof, a reversal will be awarded.

Assumpsit. Appeal from the Circuit Court of Henderson county; the Hon. ROBERT J. GRIER, Judge, presiding. Heard in this court at the April term, 1911. Reversed and remanded. Opinion filed October 13, 1911.

SAFFORD & GRAHAM and SCOFIELD & CALIFF, for appellant.

JAMES W. GORDON and O'HARRA, O'HARRA, WOOD & WALKER, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This is an action in *assumpsit* with an attachment in aid brought by the Media State Bank against G. M. Garrett as endorser and guarantor of a note for $530 dated February 8, 1908, payable one year after date to the order of Garrett with interest at 7% per annum, signed by James E. Wolfe. A demurrer was sustained to the declaration. The attachment was dismissed. The amended declaration contained the common counts and two special counts. The first special count declared on the note and set out the endorsement and guarantee, and averred that the note was presented for payment when due but was not paid by Wolfe and by reason thereof Garrett became liable therefor. The second special count was practically the same as the first except that it set up the note in *haec verba*. Pleas of *non-assumpsit* and set-off were filed. After the evidence was all in the plea of set-off was withdrawn and the evidence in support of it excluded and special pleas 3 and 4 were filed. The 3rd alleged that Garrett delivered to the Bank another note given by Wolfe to Garrett and a mortgage given by Wolfe to secure the note, which were accepted in satisfaction of the promises mentioned in the declaration. The 4th was substantially like the 3rd. Replications denying the averments of these pleas were filed. Upon the issues so formed the case was submitted to the jury, and it found for Garrett. The Bank's motion for a new trial was overruled, and Garrett had judgment for costs, from which the Bank appeals.

Appellant contends that the verdict is clearly against

the weight of the evidence, and that the court erred in admitting improper evidence bearing on the plea of set-off.

Appellant made preliminary proof of the execution of the note and of the endorsement and guarantee thereon, and the note and endorsement were admitted in evidence. This made a *prima facie* case, and cast the burden upon appellee to establish by a preponderance of the evidence the defense of accord and satisfaction set up in special pleas 3 and 4.

The evidence shows that on February 8, 1907, James E. Wolfe borrowed $530 from appellant and gave a note therefor due six months after date, signed by himself and appellee; that it was entered by appellant's assistant cashier and book-keeper in its note register as of that date; that the note sued on was entered therein April 14, 1908; that on February 8, 1908, or within a day or two afterwards, Wolfe and appellee went to the Bank and Wray, the cashier, wrote the note sued on and drew up a mortgage securing the same on Wolfe's homestead; that Wolfe took the mortgage to get his wife's signature, in which he failed; that he executed it on February 17, 1908, and the cashier sent the mortgage for record, and the same was recorded on March 2, 1908; that the new note was made payable to appellee and signed by Wolfe; that on April 14, 1908, Wolfe and appellee went to the Bank and Wray stamped on the back of the note sued on the endorsement and guarantee contract which appellee signed, and delivered the new note to the Bank. Wray surrendered the old note to Wolfe, who delivered it to Garrett. Appellee testified that the cashier wrote two notes, dated February 8, 1908, payable to himself, for $530 each, one year after date, which were signed by Wolfe, which notes were exactly alike except that one of them showed on its face it was secured by a mortgage on real estate; that Wray took the note which was not marked secured by a mort-

gage in payment of the note of February 8, 1908; that afterwards in May he delivered the note which stated that it was secured by a mortgage to Wray, who accepted it and the mortgage in discharge of the other note, and stated at the time that he would hand him the note so satisfied in a little while. Wray testified that he did not prepare two notes on February 8, 1908, or about that time, but only one, it being the note in suit, and prepared the mortgage, and that April 14, 1908, appellee signed the guarantee on the note and delivered the note to him as cashier of the Bank and that he surrendered the note dated February 8, 1907; that some time afterwards, probably in the fall, the mortgage was turned over to him that he might see what could be done with it for the protection of appellee, but not in satisfaction of the note. The assistant cashier and book-keeper testified that she kept the note register correctly; that there was but one such note dated February 8, 1908, upon the register, and that it was entered April 14, 1908. The entries on the note register were admitted in evidence and they showed no such second note. On February 9, 1909, Wray, Wolfe and appellee met. Appellee said, ''What about the note?'' Wolfe replied that he would fix the note up and send Wray the money in a short time. There was no proof that appellee demanded that the note be surrendered to him. Appellee testified that he spoke to Wolfe about the note for Wray's sake only.

Appellee's testimony was not corroborated by any other evidence. Wray's testimony, which directly contradicted that of appellee, was corroborated by the testimony of the assistant cashier and book-keeper, the entries upon the note register, the conversation wherein appellee spoke to Wolfe about the payment of the note, the fact that appellee did not demand the surrender of the note, and the presumption of ownership arising from the Bank's possession of the note. One paying in discharge of an obligation usually takes it up. We

think the evidence clearly fails to establish appellee's defense of accord and satisfaction.

The verdict against appellant may, in our opinion, be partly accounted for by the prejudice produced against it upon the introduction in evidence by Garrett, as is urged under the plea of set-off, of an affidavit for an attachment filed in this case to recover between seven and eight thousand dollars upon a large number of notes, including the one here sued upon; of an attachment writ; of its levy upon real estate of Garrett; of an attachment bond and of the dismissal of the attachment and a release of the attachment levy, and of the sustaining of the demurrer to the original declaration and of the leave given to file an amended declaration herein, which is the declaration upon this note, together with the testimony of Garrett that in settling the attachment suit, so far as it related to the other notes, except this $530 note, which he refused to settle, the officers of the Bank compelled him to allow an attorney's fee of $200, which he testified he resisted but finally yielded to. The pretense was that this $200 was to be recovered as a set-off. Of course as the $200 matter did not originate till after the present suit was begun, it could not, under any circumstances, be set-off in this suit. Pettis v. Westlake, 3 Scammon, 535. This evidence was wholly calculated to make a jury think that the Bank was pressing Garrett and when that effect had been produced the plea of set-off was withdrawn, and in a general way the evidence under the plea of set-off was informally treated as excluded, but the effect naturally remained. We are of the opinion that its exclusion did not remove the sympathy and prejudice in the minds of the jury made by its introduction.

Where the case is close on the facts, incompetent evidence is necessarily prejudicial. Frike v. Orr, 109 Ill. App. 200. The exclusion of incompetent evidence does not always cure the prejudice resulting from its admission. City of Joliet v. Donnelly, 129 Ill. App.

119. The same rule is necessarily applied where the evidence when admitted was competent under the plea of set-off, where that plea was afterwards withdrawn, and the evidence was highly prejudicial or misleading on the other issue, on the ground that the exclusion of the evidence under such circumstances could not efface the impression already made thereby on the jury, nor could such evidence be rendered harmless by instructions. The erroneous admission of evidence, subsequently stricken out, is sometimes, in connection with other error, ground for reversal. Miller & Gassaway v. Wabash R. R. Co., 123 Ill. App. 60.

We are therefore of the opinion that the court erred in not granting a new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*